**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|                                                      |    |                              |
|------------------------------------------------------|----|------------------------------|
|                                                      | *  |                              |
| **ING BANK N.V.,**                                   | *  |                              |
|     **Plaintiff**                                    | *  |                              |
|     **v.**                                           | *  | **CIVIL NO.  JKB-15-1488**   |
| **M/V TEMARA, IMO No. 9333929,**                     | *  |                              |
|     **Defendant**                                    | *  |                              |

\* \* \* \* \* \* \* \* \* \* \* \*

<u>**MEMORANDUM**</u>

This case began in this Court with a vessel arrest and a complaint by Plaintiff that the vessel was subject to a maritime lien for failure to pay for bunkers (fuel) supplied to the ship while in Balboa, Panama, in October 2014.  (Compl., ECF No. 1.)  The sale of bunkers was arranged by O.W. Bunker & Trading A/S, which allegedly assigned all right, title, and interest in customer accounts receivable for bunker deliveries to Plaintiff ING Bank, N.V., pursuant to a security agreement.  (*Id.*)  The same day Plaintiff filed its complaint and successfully moved for issuance of a warrant to arrest the ship *in rem*, CEPSA Panama, S.A., moved to intervene, alleging that it was the physical supplier of the bunkers to the vessel, that it had a maritime lien against the vessel for the unpaid bunkers, and that ING Bank, as assignee of O.W. Bunker & Trading, was liable for O.W. Bunker & Trading's nonpayment of CEPSA's bunker bill.  (ECF Nos. 13, 15.)  The vessel's owner, Cimpship Transportes Maritimos, S.A., made a restricted appearance in the case and filed an answer to ING Bank's complaint (ECF No. 32) as well as an answer to CEPSA Panama's intervening complaint (ECF No. 33).  Subsequently, Cimpship paid $266,175.54 into the Court's registry, and the vessel was released from arrest.  (ECF No. 40.)

Next, the Court entered a scheduling order providing for a period of discovery and a dispositive motions deadline.  (ECF No. 43.)  Well ahead of the deadline, ING Bank filed a motion for partial summary judgment to enforce its claimed maritime lien against the vessel (ECF No. 46) and a "motion for summary judgment to dismiss" not only CEPSA Panama's intervening complaint against ING Bank but also CEPSA Panama's claim against the vessel included in the intervening complaint (ECF No. 47).  The vessel and vessel owner, Cimpship, did not join in the latter motion.

CEPSA Panama then filed a cross motion for summary judgment against ING Bank and the vessel (ECF No. 58) and a motion to dismiss ING Bank's complaint for failure to name the real party in interest (ECF No. 71).  Thereafter, CEPSA International, B.V., was substituted for CEPSA Panama, S.A., because CEPSA International had acquired the rights to CEPSA Panama's account receivable stemming from the *Temara*'s bunker purchase.  (ECF No. 79.)

Factually, ING Bank's claim against the vessel derives from the claim of ING Bank's assignor, O.W. Bunker & Trading A/S, against the vessel.  Incorporated into O.W. Bunker & Trading's Terms and Conditions is a forum-selection clause:

> The General Maritime Law of the United States shall always apply with respect to the existence of a maritime lien, regardless of the country in which Seller takes legal action.  Seller shall be entitled to assert its rights of lien or attachment or other rights, whether in law, in equity or otherwise, in any jurisdiction where the Vessel may be found.

> Without prejudice to any other Clause herein any disputes and/or claims arising in connection with these conditions and/or any Agreement governed by them, any dispute and/or claim arisen in connection with a Vessel detained by Seller at any port, place or anchorage within the United States shall be submitted to the United States District Court for the Southern District of New York.

P.5, OW Bunker Group, Terms and Conditions of Sale for Marine Bunkers, Edition 2013 (Compl., Ex. B).  Thus, through the operation of this clause, the Southern District of New York

has been agreed to by ING Bank and the vessel as the proper forum for the resolution of their dispute.

It has become clear to the Court that this case's cross-currents may be more appropriately resolved in the Southern District of New York, and to that end, the Court posed questions to be answered by the parties relating to the Court's intention to transfer the case (including the registry funds deposited by Cimpship).  (Order, Dec. 2, 2015, ECF No. 85.)  Specifically, the Court called upon the parties to note in their respective responses if they objected to such a transfer and warned that a failure to object would be taken as consent to transfer.  (*Id.* 2.)  The forum-selection clause in O.W. Bunker & Trading's Terms and Conditions suffices as consent from ING Bank and the *Temara* to transfer.

As for CEPSA International, it asserts that its claim against the vessel and its claim against ING Bank are not governed by O.W. Bunker & Trading's Terms and Conditions. Regardless, CEPSA International does not object to the case being transferred to the Southern District of New York "provided that the transfer is made subject to the proposed stipulation attached . . . as Exhibit C" to CEPSA International's response to the December 2 order.  (Letter, Dec. 18, 2015, ECF No. 90.)  CEPSA International has cited no authority for the qualification it has purported to make on its consent to transfer.  It cites as its concern "that, upon transfer, the case maintains its present procedural posture—namely, that all discovery is stayed and no further briefing is permitted until after the Court has considered and ruled upon [CEPSA International]'s Motion for Summary Judgment and ING Bank N.V.'s Motion to Dismiss."  (*Id.*)  It is not clear to the Court whether the other parties have actually joined in this proposed stipulation.

It is well established that a federal district court has the power to make a *sua sponte* transfer of venue under 28 U.S.C. § 1404(a) to another district where the case could have been

brought or to any district to which all parties have consented.  *Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th Cir. 1986); Charles A. Wright, Arthur R. Miller, Edward H. Cooper, and Richard D. Freer, *Federal Practice & Procedure* § 3844 & n.2 (4th ed. 2013) ("Wright & Miller") (citing cases).  Before undertaking a *sua sponte* transfer, the Court should notify the parties of its intentions and give them the opportunity to brief the issue.  *Feller*, 802 F.2d at 729 n.7; Wright & Miller, § 3844 & n.3.  The Court's order of December 2, 2015, constituted the requisite notification to all concerned.

Transfer to another district is warranted under § 1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice."  Where a forum-selection clause is involved, a transfer promotes "the interest of justice" because such a clause "should be given controlling weight in all but the most exceptional cases."  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the Western District of Texas*, 134 S. Ct. 568, 581 (2013) (alterations and internal quotation marks omitted).  The interest of justice in the instant case's transfer to the Southern District of New York is further bolstered by many, similar cases involving bunker contractors, physical bunker suppliers, and vessels that already exist in that district, either through original suit there or by transfer there. (*See* Cimpship's Let., Dec. 18, 2015, ECF No. 91.)  Particularly, a goodly number of these involve O.W. Bunker & Trading (and related companies) and put at issue the same general question present in this case, *i.e.*, whether the bunker contractor or the physical bunker supplier has the better claim.  Having that question decided consistently is highly desirable.

As for CEPSA International's concern about maintaining this case's present procedural posture, the forum court, regardless of whether the case stays here or is transferred elsewhere, retains discretion to manage its docket as it sees fit.  Even if the case were to stay here, the undersigned might decide to change the Court's previously expressed intentions about how the

case should proceed.  Further, a transferor court has no authority to require the transferee court to conduct a litigation case in a particular way, and this Court will not dictate the course of the case going forward in the Southern District of New York.

Despite CEPSA International's qualified consent to transfer, the Court still concludes the interest of justice requires the transfer.  It must be remembered that CEPSA International is an intervenor to another party's suit, and it would be wrong to allow an intervenor's interest to outweigh the primary party's interest in having the case proceed in the proper forum. Metaphorically, that would be the tail wagging the dog.

A separate order will enter reflecting the rulings made in this memorandum.

DATED this 5th day of January, 2016.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge