ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/20/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -X
ING BANK N.V.,

        Plaintiff,              16 Civ. 95 (LLS)

  - against -             OPINION & ORDER

M/V TEMARA,

        Defendant.
- - - - - - - - - - - - - - - - - - - -X
ING BANK N.V.,

        Plaintiff,              16 Civ. 2051 (LLS)

  - against -             OPINION & ORDER

M/V VOGE FIESTA,

        Defendant.
- - - - - - - - - - - - - - - - - - - -X
ING BANK N.V.,

        Plaintiff,              16 Civ. 6453 (LLS)

  - against -             OPINION & ORDER

M/V JAWOR,

        Defendant.
- - - - - - - - - - - - - - - - - - - -X

    The issue to be decided on these applications for partial summary judgment is whether ING Bank's maritime liens on the defendant vessels, created by Section 31342 of the Commercial Instruments and Maritime Liens Act, 46 U.S.C. § 31301 et seq. ("CIMLA"), and whose assignment was previously validated by this Court, are vulnerable to the defense that the underlying

transactions were made in bad faith by ING's assignors. ING Bank moves for partial summary judgment striking any such defense. See 16 Civ. 95 (Dkt. No. 228); 16 Civ. 2051 (Dkt. No. 122); 16 Civ. 6453 (Dkt. No. 85).

The motions are granted.

## BACKGROUND[1]

ING, as assignee of the now-defunct O.W. Bunker group, asserts maritime liens against each particular defendant vessel, for non-payment for fuel sold to each vessel's charterer by an O.W. Bunker group entity and delivered to each vessel by one of its subcontractors. The vessel owners assert that there are no liens on the vessels because the O.W. entities knew, and accepted, that their fuel-providing subcontractors would probably never be paid, and therefore lacked the good faith necessary for a maritime lien.

## DISCUSSION

### *The Maritime Lien Act*

Section 31342 of CIMLA, which created the maritime liens, states, in full text:

---

[1] This background is abbreviated. For more detail, see the Second Circuit's opinion, ING Bank N.V. v. M/V TEMARA, IMO No. 9333929, 892 F.3d 511 (2d Cir. 2018), and this Court's subsequent opinion, ING Bank N.V. v. M/V Temara, 342 F. Supp. 3d 558 (S.D.N.Y. 2018).

> (a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner--
>
>   (1) has a maritime lien on the vessel;
>
>   (2) may bring a civil action in rem to enforce the lien; and
>
>   (3) is not required to allege or prove in the action that credit was given to the vessel.
>
> (b) This section does not apply to a public vessel.
>
> 46 U.S.C. § 31342.

The vessel owners argue that, although none is mentioned in the statute, an equitable defense of bad faith bars the creation of the statutory maritime lien. In support, the vessel owners point to the statutory history, the 1971 Report of the House of Representatives' Committee on Merchant Marine and Fisheries, which twice uses the words "in good faith." See H. Rep. No. 92-340, at 1, 3 (1971).

Neither mention of good faith implies, or conceives, meaning that the seller must be fair to his buyers. On the contrary, "good faith" describes the seller's trust that he will be paid for what he supplies, before the ship sails away. The Report states that "The purpose of the bill, H.R. 6239, is to protect terminal operators, ship chandlers, ship repairers, stevedores and other suppliers who in good faith furnish necessaries to a vessel." Id. at 1. And in the Report's General Statement, it describes the issue it faced: "The

question presented was where a loss occurs in this situation, whether it should be suffered by the owner of the vessel, or the American materialman who furnished such necessaries in good faith." Id. at 3. It concluded, after careful consideration of the entire record, "that, as a matter of equity, the [ship] owner should bear the loss in such a situation." Id. at 3.

Those are the only two mentions of good faith in the Report, and they both refer to the seller's good faith in providing essentials to a vessel, which is tempted to sail away without paying. Nothing in the Report burdens the lien it grants the seller with any collateral duty to deal properly with his counterparties.

The vessel owners retreat to a broader argument: that apart from the statute itself, there is a general principle of equity which requires good faith in all dealings, by all participants and denies a profit to a wrongdoer. Having treated its own suppliers shabbily, they argue, O.W. (and thus its assignee ING) is not entitled to the benefits of the maritime lien.

There are two obstacles to that argument: the first is that if such a general standard were to be engrafted on a maritime lien, the whole function of the lien - to assure payment to the supplier - would be frustrated in every case by an audit of his related business dealings. The second is that such an approach would be inconsistent with the uniform characterizations of the

-4-

elements of a lien being the ones set forth in the statute, with no additional embellishments, regardless of how morally appealing.

As stated in Barcliff, LLC v. M/V DEEP BLUE, IMO No. 9215359, 876 F.3d 1063 (11th Cir. 2017), the lien holder's obligation to pay his subcontractors is immaterial to its lien:

> Nevertheless, Radcliff contends that the general contractor bears an additional obligation not mentioned in Galehead before it can receive a lien: it must pay the subcontractor to whom it delegated performance. Radcliff acknowledges that no authority directly supports this proposition, but submits that it lies latent in the case law.
>
> Radcliff's argument is meritless. First and foremost, it finds no support in the text of the statute. Section 31342(a) merely requires that the would-be lienor "provid[e] necessaries" to the vessel. It does not forbid the supplier from using a subcontractor to do so, or require that the parties be current on their accounts payable before a lien arises. We have consistently held that a maritime lien attaches the moment the necessaries are supplied; subsequent administrative matters such as tendering an invoice are irrelevant. Likewise, payment by the general contractor to the subcontracted supplier is immaterial to the general contractor's lien—it arises at the moment the subcontractor renders performance on the general contractor's behalf.

Barcliff, 876 F.3d at 1074 (citations omitted).

Thus it is not surprising that in The Kalfarli, 277 F. 391 (2d Cir. 1921), the Second Circuit held that even where a materialman's agreement to supply a vessel with necessaries was based on the materialman's fraudulent deception, the materialman had a statutory maritime lien on the vessel for the necessaries

he delivered.

> That the libelant actually performed work for the ship and furnished her with certain materials cannot be denied. For such work and for such supplies the maritime law gives a lien. We do not think that a court of admiralty can deprive him of that right on the ground that he claimed fraudulently to have done more work than he did, or charged fraudulently for the labor or supplies he in fact furnished.

Id. at 397. Here, it is similarly undisputed that the fuel was delivered to the vessels. Thus, the materialmen's assignee has liens on the vessels, no matter the morality of the suppliers' conduct with their subcontractors.

As "maritime liens are strictly creatures of statute," ING Bank N.V. v. M/V TEMARA, IMO No. 9333929, 892 F.3d 511, 523 (2d Cir. 2018), and there is no basis in CIMLA, the Report, or the general maritime lien law supporting the vessel owners' imagined application of a theory of bad faith, their bad faith defense is unavailing and is stricken.

## CONCLUSION

Plaintiff ING's motions for partial summary judgment striking the defendant vessels' bad faith affirmative defense (16 Civ. 95 (Dkt. No. 228); 16 Civ. 2051 (Dkt. No. 122); 16 Civ. 6453 (Dkt. No. 85)) are granted.

The further request in the notice of motion that the vessels TEMARA and VOGE FIESTA be directed to show cause why ING should not have judgment granting its lien claims, with its

-6-

reference to the transcript of the October 4, 2019 conference and "all of the prior pleadings and proceedings in this matter, and to any additional arguments to be properly presented in support of the relief requested . . . ," is too broad and vague to be given effect as an order and is therefore denied.

A conference will be held on Wednesday, January 15, 2020 at 3:00 PM to discuss and schedule further proceedings.

So ordered.

Dated:   December 20, 2019
         New York, New York

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.